HARRIS, Judge,
dissenting.
I respectfully dissent. In my view, because the landowner .was denied the right to effectively cross-examine the State’s sole appraiser, a fair trial was denied and a new trial should be ordered.
The State’s appraiser testified, as did all the other experts, that the highest and best use of the property being taken was for commercial purposes. The State’s appraiser also agreed that comparable sales, if they are truly comparable, must be based on that same highest and best use as the property being condemned. He then relied on three comparable sales which he told the jury were indeed parcels which he had been advised were appraised as commercial property even though he acknowledged that he had not *296 seen the appraisals. Since his belief that the comparable sales had a highest and best use as commercial was reflected in his appraisal, the accuracy of his valuation depends on the truth of what he thought the comparable sales appraisals said. Thus, he was permitted to give an opinion based on double hearsay — what others told him the appraisals said. The attorney for the landowner had obtained copies of the appraisals which had been used in the acquisition of the properties relied on by the State’s appraiser as comparable parcels. On cross-examination the landowner’s attorney attempted to have the State’s appraiser acknowledge that he had mistakenly based his valuation on sales of property with a highest and best use as residential and not as commercial. The State objected, and the court sustained the objection to the use of the appraisals to cross-examine the State’s appraiser. Even Ripley would be amazed by a legal proposition that will permit one to testify concerning an opinion based on the accuracy of appraisals covering other parcels and yet avoid being cross-examined on those appraisals by claiming unfamiliarity with them.
Even so, the court did not rule on the basis of authenticity. The State’s objections to the contested appraisals were (1) hearsay, (2) irrelevant, and (3) not listed on the pre-trial exhibit. The court sustained the objection. None of the grounds raised by the State was well taken. Reference to the appraisal for the purpose of cross-examination was to show what the appraisals said (i.e., that they were based on the appraiser’s finding that the highest and best use of the properties was residential) and not for the truth of what' the appraisals said (i.e., that in fact the highest and best use of the comparable properties was residential). Thus, when offered in cross-examination, the appraisals were not hearsay. It was only necessary to show that the appraisals used in the sales relied on as comparables reflected a highest and best use as residential in order to show that the State’s expert erroneously relied on the appraisals.
The relevancy of the contested appraisals seems self-evident. The statements as to the highest and best use contained in such appraisals are in direct conflict with what the State’s appraiser assumed them to be when he arrived at his value in the present ease. Nothing could- be more relevant to show this error.
Impeachment evidence need not be listed in a pre-trial statement. And the only relevancy of these contested appraisals is impeachment. And while it is true that there was no proffer of the appraisals themselves, there was a proffer as to the fact that the highest and best use listed in such appraisals was residential. This fact has not been challenged. For the purpose of this appeal, such proffer is sufficient and we do not need the actual appraisals before us. See Orlando/Orange County Expressway Authority v. Latham, 643 So.2d 10 (Fla. 5th DCA 1994).
The failure to permit cross-examination on this point is not harmless. The jury returned an award in the exact amount testified to by the State’s appraiser. The landowner should have been permitted to make the appraiser either “back down” on his value or at least explain its continued validity in light of his incorrect assumption.
It seems to me that the role of the attorney for the condemning authority is not unlike that of the prosecuting attorney in criminal matters. The duty of the prosecutor is to find the truth and not merely to win a conviction. For example, it would be improper for the prosecutor to put on an alleged eyewitness to place the defendant at a particular place at a particular time if the prosecutor learned, even during trial, that the proposed witness was out of town during the critical period. The duty of the condemnor’s attorney should be to present a good faith case to the jury as to the full value of the property. It is not only the landowner’s constitutional right to receive full value for his property taken by governmental action, it is the con-demnor’s constitutional obligation to pay full value for it. Thus, the condemnor’s attorney should not sit idly by when it appears that the appraisal which the condemnor is relying on is based on misinformation. Although the condemnor is not obliged to accept the landowner’s contention as to what the value of the - property is, if the condemnor becomes aware that the appraisal on which it relies *297 cannot legitimately be argued as reflecting the full value of the property, it should join in correcting any such error. Whether the parties negotiate or litigate in order to determine what the “full value” is, the condemnor should not be permitted to present as its appraisal one which it has reason to believe does not reflect the full value of the property.